**Electronically Filed
Intermediate Court of Appeals
30466
14-MAR-2012
09:18 AM**

NO. 30466

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI‘I


BRINKWOOD LAND EQUITIES, LTD, Plaintiff-Appellant,
v.
HILO BROKERS, LTD; KELLY MORAN, et al, Defendants-Appellees


APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 07-1-0285)


MEMORANDUM OPINION
(By:  Foley, Fujise and Reifurth, JJ.)


Plaintiff-Appellant Brinkwood Land Equities, Ltd. (Brinkwood) appeals from the Judgment entered March 19, 2010 in the Circuit Court of the Third Circuit[1] (circuit court) in favor of Defendants-Appellees Hilo Brokers, Ltd. (Hilo Brokers) and Kelly Moran (Moran) (collectively, Defendants) and against Brinkwood.  The circuit court entered judgment pursuant to the "Order Granting Defendants Hilo Brokers, Ltd. and Kelly Moran's Motion for Summary Judgment Filed December 24, 2009," (Order) filed February 17, 2010, and the "Clerk's Taxation of Costs," filed March 3, 2010.

On appeal, Brinkwood contends the circuit court erred when it (1) refused to continue the hearing pursuant to Hawai‘i Rules of Civil Procedure (HRCP) Rule 56(f) and (2) granted

---

[1]  The Honorable Glenn S. Hara presided.

Defendants' Motion for Summary Judgment (MSJ) by applying an inappropriate standard regarding disclosure of material facts about the property.

## I.   BACKGROUND

Brinkwood's predecessors-in-interest James Clay (Clay) and James Singleton (Singleton) (collectively, Predecessors), through their broker, Barclay Wagner, submitted a written offer by way of a Deposit Receipt Offer and Acceptance (DROA) on a four-acre parcel of undeveloped land at 245 Wainaku Street in Hilo, Hawaiʻi (Property).  Predecessors were attracted to the Property because they liked the description of the Property as being in close proximity to "the views and sounds of waterfalls and Pukihae St[r]eam[.]"

On May 23, 2005, the seller, Geraldine Randall (Randall), via Defendants, accepted Predecessors' offer of $1.915 million and signed the DROA, creating a contract.  The DROA included the following addenda: (a) Existing "As Is" Condition Addendum ("As Is" Addendum), (b) Hawaii County Addendum (County Addendum), (c) Caribbean Tree Frog[2] Pest Alert Addendum (Frog Alert), (d) Seller's Real Property Disclosure Statement (Disclosure Statement), and (e) Option Agreement Input Form (Option Agreement).  The County Addendum and the Frog Alert notified Predecessors of the existence of coqui frogs in the

---

[2]   The United States Department of Agriculture, Animal and Plant Health Inspection Service Pest Alert provides in pertinent part:

> First spotted in Hawaii in 1992, invasive Caribbean tree frogs have been a threat to the State's agriculture, tourism, and native ecosystems ever since.  In just 10 years, burgeoning populations of two species, the coqui frog [] and the greenhouse frog [], have become established on Maui, Oahu, Kauai, and Hawaii's main island.
> .  .  .  .
>
> The coqui frog .  .  . is distinguished by the loud, continuous chirping of the male.  Beginning at dusk and continuing until dawn, male coqui frogs move into the trees and call "ko-kee" over and over to attract females.  The noise from a group of frogs can exceed 70 decibels, rivaling the sound of a lawnmower or chainsaw.

http://www.aphis.usda.gov/publications/wildlife_damage/content/printable_version/pa_wscoquitfrogs.pdf

area. The Option Agreement created an option contract, with the Predecessors' consideration of $75,000 due by September 1, 2005. The DROA provided that if Predecessors failed to perform their obligations under the DROA, Defendants could bring an action for damages for breach of contract and retain the initial and any subsequent deposits as liquidated damages. On May 25, 2005, Predecessors made an "initial earnest money deposit" of $25,000 with First American Title Escrow.

On June 13, 2005, Brinkwood "was incorporated with the intent of proceeding with the purchase and development of the Property." Singleton was president, treasurer, and director and his daughter, Heather Singleton, was vice president, secretary, and director. Singleton and Clay assigned their interest in the DROA to Brinkwood.

On August 1, 2005, Brinkwood sent a fax to Defendants cancelling escrow on the Property. On September 1, 2005, in spite of cancelling escrow, Singleton contacted Randall directly and made plans to meet with her and Moran, Randall's real estate broker, on September 9, 2005 "[t]o sign a new deal and make a deposit." Singleton testified at his deposition that he cancelled the September 9, 2005 meeting after he made a trip to Hilo on September 6, 2005, visited the Property at night, and realized how loud the coqui frogs were. He also testified that he had learned the area near the Property was "populated by drug dealers and hookers."

Brinkwood filed its First Amended Complaint (Complaint) in circuit court on November 7, 2007. Brinkwood contended Defendants had misrepresented the Property and its development potential when, instead of being in an area "where one could hear the flow of water falls and a stream . . . all one could hear is the sound of dying and tortured animals (which is the sound of the frogs occupying the area) and [the Property] was in a neighborhood where drug dealers and prostitutes frequented."

On November 30, 2007, Defendants answered the Complaint. On March 21, 2008, Brinkwood answered interrogatories

and on July 31, 2009, Defendants took depositions of Clay and Singleton.  On December 24, 2009, Defendants filed their MSJ. The circuit court heard the case on January 27, 2010, and on February 17, 2010, the court filed the Order granting summary judgment to Defendants.  Pursuant to the Order, judgment was entered on March 19, 2010.  Brinkwood timely filed its appeal on April 16, 2010.

## II.  STANDARDS OF REVIEW

### A.  Motion for HRCP Rule 56(f) Continuance

The circuit court's decision to deny a request for a continuance pursuant to HRCP Rule 56(f) shall not be reversed absent an abuse of discretion.

[T]he request must demonstrate how postponement of a ruling on the motion will enable him or her, by discovery or other means, to rebut the movants' showing of absence of a genuine issue of fact.  An abuse of discretion occurs where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.

Josue v. Isuzu Motors America, Inc., 87 Hawai'i 413, 416, 958 P.2d 535, 538 (1998) (internal quotation marks and brackets omitted).

Associates Financial Services Co. of Hawaii, Inc. v. Richardson, 99 Hawai'i 446, 454, 56 P.3d 748, 756 (App. 2002).

### B.  Motion for Summary Judgment

On appeal, the grant or denial of summary judgment is reviewed de novo.  See State ex rel. Anzai v. City and County of Honolulu, 99 Hawai'i 508, [515], 57 P.3d 433, [440] (2002); Bitney v. Honolulu Police Dep't, 96 Hawai'i 243, 250, 30 P.3d 257, 264 (2001).

[S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties.  The evidence must be viewed in the light most favorable to the non-moving party.  In other words, we must view all of the evidence and inferences drawn therefrom in the light most favorable to the party opposing the motion.

Kahale v. City and County of Honolulu, 104 Hawai'i 341, 344, 90 P.3d 233, 236 (2004) (citation omitted).

Nuuanu Valley Ass'n v. City & Cnty. of Honolulu, 119 Hawai'i 90, 96, 194 P.3d 531, 537 (2008).

### III.  DISCUSSION

**A.    The circuit court did not err when it refused to continue the hearing on Defendants' MSJ pursuant to HRCP Rule 56(f).**

When a party contesting summary judgment asks the court to continue a hearing pursuant to HRCP Rule 56(f), the party must present affidavits setting forth the reasons it cannot present by affidavit facts essential to justify the party's opposition. Acoba v. General Tire, Inc., 92 Hawai'i 1, 11-12, 986 P.2d 288, 298-99 (1999).  The "request must demonstrate how postponement of a ruling on the motion will enable him or her, by discovery or other means, to rebut the movants' showing of absence of a genuine issue of fact."  Josue v. Isuzu Motors America, Inc., 87 Hawai'i 413, 416, 958 P.2d 535, 538 (1998) (internal quotation marks, citation, and brackets omitted).  If the circuit court deems the stated reasons sufficient, the court may grant a continuance of the motion to permit the party to obtain affidavits, take depositions, or conduct other discovery. Wilder v. Tanouye, 7 Haw. App. 247, 253, 753 P.2d 816, 820 (1988) (citing 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure: *Civil 2d* § 2740 (1983)).  "A [circuit] court's decision to deny a request for a continuance pursuant to HRCP Rule 56(f) will not be reversed absent an abuse of discretion." Josue, 87 Hawai'i at 416, 958 P.2d at 538.

Brinkwood sought relief under HRCP Rule 56(f) by filing a memorandum in opposition to the MSJ and attaching a declaration by Singleton stating Brinkwood needed time to depose Moran. Brinkwood argued it was a question of material fact whether Moran knew about the coqui frog problem and "other issues," whether Moran sufficiently examined the Property, and whether Moran adequately disclosed the problems to Brinkwood.

Brinkwood failed to explain why it had been unable to depose Moran between November 7, 2007, when the Complaint was

filed, and January 27, 2010, when the hearing on the MSJ was held, other than to state it had encountered "scheduling difficulties." Between August 2008 and March 2009, the circuit court granted four stipulated requests by Brinkwood to extend the time to file a pretrial statement because of scheduling problems in setting depositions, but Defendants were the only party to file a Notice of Taking Depositions Upon Oral Examination.

Brinkwood provided no evidence that it tried to depose Moran at any time prior to the hearing on the MSJ nor did it set forth any facts upon which the circuit court could conclude that Brinkwood had not had an adequate opportunity for discovery. As will be discussed in the next section, Brinkwood also failed to demonstrate how a continuance would enable it to rebut Defendants' "showing of absence of a genuine issue of fact." Josue, 87 Hawai'i at 416, 958 P.2d at 538. We conclude the circuit court did not abuse its discretion when it denied Brinkwood's request for a continuance to depose Moran.

B. The circuit court did not err when it granted Defendants' MSJ.

Brinkwood asserts that the circuit court erred in granting summary judgment to Defendants when the court shifted "the burden of disclosure by Defendants to one of discovery by [Brinkwood]." Brinkwood contends it was a question of material fact whether defendants had knowledge of the [c]oqui frog problem and the alleged adverse social conditions in the neighborhood and "whether [D]efendants' fail[ure] to disclose material facts violated [Hawaii Revised Statutes] HRS § 467-14(18) [(Supp. 2011)][3] and, by analogy, [HRS §] 508D-7(c) [(2006 Repl.)]."[4]

---

[3] HRS § 467-14 provides, in pertinent part:

§467-14 Revocation, suspension, and fine. In addition to any other actions authorized by law, the commission may revoke any license issued under this chapter, suspend the right of the licensee to use the license, fine any person holding a license, registration, or certificate issued under this chapter, or terminate any registration or certificate issued under this chapter, for any cause authorized by law, including but not limited to the following:

Based on these assertions, Brinkwood argued summary judgment should not have been granted.

We review the granting of a motion for summary judgment de novo. <u>Nuuanu Valley Assʻn</u>, 119 Hawaiʻi at 96, 194 P.3d at 537. Summary judgment is appropriate if, when viewed in the light most favorable to the non-movant, the circuit court concludes there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. <u>Id.</u>

### a) Disclosure of Coqui Frog Infestation

As the moving party, Defendants had the burden to demonstrate the absence of any genuine issue of material fact. <u>French v. Hawaii Pizza Hut, Inc.</u>, 105 Hawaiʻi 462, 470, 99 P.3d 1046, 1054 (2004). Regarding the coqui frog problem, Defendants produced evidence to show they had disclosed the existence of the problem and, additionally, to show Brinkwood knew about the coqui frog problem via other sources.

The DROA signed by Predecessors included as attachments the County Addendum and the Frog Alert.[5] The County Addendum and

--------

. . . .

> (18) Failing to ascertain and disclose all material facts concerning every property for which the licensee accepts the agency, so that the licensee may fulfill the licensee's obligation to avoid error, misrepresentation, or concealment of material facts[.]

[4] HRS § 508D (2006 Repl. & Supp. 2011), which governs residential real property, not vacant land, was incorporated by reference into the DROA. HRS § 508D-7(c) provides, in relevant part:

> (c) If the seller's agent is or becomes aware of any material facts inconsistent with or contradictory to the disclosure statement or the inspection report of a third party provided by the seller, the seller's agent shall disclose these facts to the seller, the buyer, and the buyer's agent.

[5] The County Addendum and the Frog Alert, initialed/signed by Predecessors, informed buyers of property in Hawaii County of the coqui frog problem:

> Caribbean Tree Frogs have been expanding into various areas of the Big Island. Because tree frogs are nocturnal, Buyer and their Realtor will not hear any of the chirping sounds that are associated with the frogs during a daytime tour of the subject property. <u>Buyer is advised to visit the subject property in the evening during their inspection period to determine the level of frog infestation and frog chirping and</u>

the Frog Alert advised Predecessors to conduct their own inspection to ascertain whether the level of noise made by the frogs was acceptable to Predecessors in terms of the purpose for which they were purchasing the Property. During his deposition, Singleton acknowledged receipt of the County Addendum and the Frog Alert and admitted he did not do any investigation or talk to his realtor about the frog problem.

In addition to being informed of the coqui frog problem via the County Addendum and the Frog Alert, Singleton indicated in a July 27, 2005 memorandum to Moran that he was aware of the problem. In the memo, Singleton wrote: "We also learned from the former owner, Mr. Higgins, who lived there in the 90's, that there is a serious frog problem. The creek area is infested and they croak all night. That too needs to be addressed."

At the hearing on the MSJ, in answer to the circuit court's query whether there was any genuine issue of material fact about whether Brinkwood's Predecessors had received the disclosures about the frog infestation, Brinkwood admitted the disclosures had been received and Predecessors had acknowledged receipt. Brinkwood argued the disclosures were misleading and insufficient because the disclosures "talk[ed] about chirping little frogs," and did not state definitively that frogs were in the area or describe the extent of infestation and the level of noise. Brinkwood pointed to nothing to support his theory that disclosure required more than Defendants' action of disclosing the problem and advising Predecessors to investigate any potential problems related to the coqui frog. We conclude the circuit court did not err when it held there was no genuine issue

whether it is acceptable to the Buyer. Buyer should be aware that the level of noise may vary depending upon factors such as weather, temperature, time of night, increase or decrease in level of infestation and other variables. In addition, the success or failure of any government eradication program may also affect the level of frog chirping as well. (Emphasis added.)

of material fact in regards to Defendants' disclosure of the potential problem of coqui frog noise.

### b) Disclosure of Neighborhood Conditions

In Hawaiʻi real estate transactions, a seller or his agent has a duty to disclose "any fact, defect, or condition, past or present, that would be expected to measurably affect the value to a reasonable person of the residential real property being offered for sale." HRS § 508D-1. These material facts, defects, or conditions must be within the seller's or his agent's knowledge or control or must be able to be seen from visible, accessible areas. Id. The question before us is whether Defendants had a duty to inspect and disclose information about off-site social conditions that could affect the value of the Property. Brinkwood cites to no Hawaiʻi statute or case to support its theory that a seller or broker has a duty to inspect or disclose information about off-site social conditions.

Instructive is a decision of the New Jersey Supreme Court that imposed a duty on agents to disclose to potential buyers of residential real estate any adverse off-site physical conditions that an objectively reasonable buyer would consider material to the value of the property if those conditions were known to the agent and not readily observable to the buyer. Strawn v. Canuso, 140 N.J. 43, 64, 657 A.2d 420, 431 (1995). The court determined the seller had a duty to disclose the existence of a nearby closed hazardous-waste landfill that was not readily observable to the buyer. Id. at 423. The Strawn court declined to extend the disclosure duty to conditions that were not "root[ed] in the land." The court clarified:

> We do not hold that sellers and brokers have a duty to investigate or disclose transient social conditions in the community that arguably affect the value of property. In the absence of a purchaser communicating specific needs, builders and brokers should not be held to decide whether the changing nature of a neighborhood, the presence of a group home, or the existence of a school in decline are facts material to the transaction.

Id. at 431.[6]

In the instant case, Randall provided a Disclosure Statement that included a list of twenty-six questions concerning the Property to which Randall could answer "Yes," "No," or "NTMK" (Not To My Knowledge). Brinkwood argued to the circuit court that Questions 24 and 25[7] indicated Randall's duty to disclose the alleged social conditions in the neighborhood and Moran's duty to disclose the conditions when Randall did not disclose them.[8] But the examples of "adverse conditions" listed in Question 24, although not intended to be inclusive, related only to physical conditions of the neighborhood, similar to the Strawn court's focus on off-site physical conditions. The off-site examples in Question 25 related to physical conditions or zoning, while the other examples (homicide, felony, or suicide) were on-site conditions regarding the Property.

We find nothing in Hawai'i statute or case law to support Brinkwood's contention that Defendants had a duty to inspect and/or disclose facts about transient social conditions in the neighborhood. Accordingly, the circuit court did not err when it granted summary judgment in favor of Defendants.

---

[6] Subsequently, the New Jersey Legislature curtailed the scope of a seller's disclosure obligations with the passage of the New Residential Construction Off-Site Conditions Disclosure Act, so that sellers were no longer under a duty to disclose off-site physical conditions such as landfills but needed only to provide a list of such sites. New Jersey Statutes Annotated (N.J. Stat. Ann.) § 46:3C-4, 5 (1995), Nobrega v. Edison Glen Associates, 327 N.J. Super. 414, 418, 743 A.2d 864, 866 (2000). The Legislature identified "off-site conditions" as ones affecting the physical property, such as nearby landfills, underground gas transmission lines, and electrical transformer substations. N.J. Stat. Ann. § 46:3C-3 (1995).

[7] Question 24 asked, "Are you aware of any adverse conditions existing in the general neighborhood/area (such as pesticides, soil problems, irrigation, etc.)?," to which Randall marked, "NTMK." Question 25 inquired, "Is there any additional information you should disclose (i.e. pending developments in the area, road widening projects, zoning changes, homicide, felony, or suicide occurring on Property etc.)? Randall marked the "yes" box with a question mark and wrote that a neighbor "may have development plans[.]" RA 1 at 259

[8] HRS § 508D-7(c) requires the seller's agent to disclose material facts he becomes aware of that are inconsistent with or contradictory to the disclosure statement.

IV.    CONCLUSION

The Judgment entered March 19, 2010 in the Circuit Court of the Third Circuit is affirmed.

DATED:   Honolulu, Hawaiʻi, March 14, 2012.


On the briefs:

Edward C. Kemper
for Plaintiff-Appellant.

Sidney K. Ayabe
Ryan I. Inouye
(Ayabe, Chong, Nishimoto,
Sia & Nakamura)
for Defendants-Appellees.

Presiding Judge

Associate Judge

Associate Judge